SO ORDERED.

SIGNED this 02 day of April, 2010.

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

RICHARD MERLIN TARKINGTON, JR.                    CASE NUMBER: 10-00012-8-JRL
                                                                              CHAPTER 7
                DEBTOR.
_____

### ORDER

This matter came before the court on Branch Banking and Trust Company's ("BB&T")

motion for a Rule 2004 examination.  A hearing on this matter was held in Raleigh, North

Carolina, on March 25, 2010.

### BACKGROUND

The debtor filed for relief under chapter 7 of the Bankruptcy Code on January 2, 2010.

Prior to filing, the debtor was represented by an attorney named Charles Jeffrey Horsley

("Horsley").  Horsley also represented the entity Game World, Inc. ("Game World"), of which

the debtor was the principal.  Game World filed a related chapter 7 (Case Number 10-00011-8-

JRL) on the same date as the debtor's individual case.  While operating, Game World specialized

in gaming furniture as a licensed retailer for high-end Brunswick pool tables.

In November 2008, Horsley was hired by the debtor to draft articles of incorporation for

a new entity known as Game Room Home Store, Inc. ("Game Room").  At the debtor's § 341 meeting, the debtor stated that he was responsible for incorporating Game Room.  However, his son, Christopher Tarkington, was the owner/operator of the business.  The debtor further stated that he never intended to be a shareholder of Game Room; yet, stock certificates issued upon incorporation bear his name.  The stock certificates have not been transferred to the debtor's son and remain in Horsley's files.  The debtor currently acts as a consultant for Game Room.  Like Game World, Game Room is in the business of selling high-end gaming furniture.  Game Room, however, is not licensed to sell Brunswick merchandise.

During the summer of 2009, Game World conducted a liquidation sale.  BB&T never received notice of the sale or proceeds therefrom.  All that remained after liquidation were damaged goods in poor condition.  Game Room stores now operate in the same or adjacent locations that Game World previously occupied.  In at least one instance, the former Game World store is separated from the current Game Room store by heavy black plastic.  Although not a licensed merchant, Game Room's inventory includes Brunswick tables.

As the case currently stands, Game World appears to have no assets for the trustee to administer.  BB&T asserts that the debtor's case, as it relates to Game World and the incorporation of Game Room, is shrouded in suspicion.  Game World's schedules do not reflect a transfer of assets to Game Room; and, during the § 341 meeting, the debtor denied that any such transfer occurred.  Nonetheless, BB&T seeks further information and documentation from Horsley to determine if any assets remain which may benefit the estate.  The trustee previously asked Horsley for the debtor's stock certificates and Game World's corporate records.  Little response was provided.

2

In full agreement with BB&T's motion, the trustee waived attorney-client privilege for both Game World and the debtor. A 2004 exam of Game World is already scheduled. Both BB&T and the trustee are of the opinion that further information concerning the liquidation of Game World and formation of Game Room may benefit the bankruptcy estate. Counsel for the debtor does not contest the trustee's ability to waive Game World's privilege. However, he asserts that any examination of the individual debtor should be conducted in the form of interrogatories. This form of information gathering is sought to ensure attorney-client privilege is preserved. Therefore, the issue before the court, with respect to an individual debtor, is who holds the attorney-client privilege upon the filing of bankruptcy and may such privilege be waived.

## ANALYSIS

The principle of the attorney-client privilege serves an important purpose in effective representation and the administration of justice by promoting open and forthright communications between attorneys and their clients. Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990 (1985). However, because the privilege has the potential to interfere with the legal process by preventing disclosure of relevant information, it should be narrowly construed. In re Bame, 251 B.R. 367, 372 (Bankr. D. Minn. 2000). Outside the bankruptcy context, the privilege is held solely by the client. Moore v. Eason (In re Bazemore), 216 B.R. 1020, 1023 (Bankr. S.D. Ga. 1998). This is not necessarily a truism inside the bankruptcy system. Once a petition is filed, the relationship between the attorney and client is altered by the appointment of a trustee who succeeds to many of the debtor's interests. In re Miller, 247 B.R. 704, 708 (Bankr. N.D. Ohio 2000). Many trustees have

3

asserted that one of these interests is the attorney-client privilege, along with the ability to waive such. Trustees have raised this argument on the basis that waiver of the privilege may aid in the fulfillment of their duties. Id.

With respect to a corporate debtor, the theory that a trustee may waive attorney-client privilege is established. Weintraub, 471 U.S. at 358, 105 S.Ct. at 1996. The Supreme Court's decision in Weintraub is grounded on the premise that at filing, the trustee is vested with control of the entity. Control exerted by the trustee was analogized to the role of manager outside of bankruptcy who is a fiduciary with the authority to act on behalf of a company. 471 U.S. at 354, 105 S.Ct. at 1994. Following the reasoning of Weintraub, the trustee in the case at bar had full authority to waive the attorney-client privilege with respect to Game World. The debtor does not contest this point. However, the law is less clear as to whether the attorney-client privilege passes to a trustee when an individual debtor is involved.

Finding it had no reason to address individual debtors, the Court in Weintraub declined to extend its holding. 471 U.S. at 356, 105 S.Ct. at 1995. " [T]here is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one that we embrace . . . ."471 U.S. at 356-357, 105 S.Ct. at 1995. In the wake of Weintraub, courts have generally taken one of three approaches when determining if a trustee's waiver is effective. Courts either: (1) deny extension of the privilege; (2) allow the privilege to transfer; or (3) strike a balancing test on a case-by-case determination. The third approach appears to be the most common. See, SEC v. Marker, 2006 WL 288426 (M.D.N.C.)(applying the balancing approach to a receivership, but finding that the privilege does not pass to the receiver where criminal charges could be imposed); In re Bame,

251 B.R. 367 (Bankr. D. Minn. 2000)(the privilege passed with regard to all matters related to estate administration when the debtor was serving as the DIP.  Where, however, the debtor was acting as an individual, the privilege potentially reverted); In re Miller, 247 B.R. 704 (Bankr. N.D. Ohio 2000)(applying the approach, but holding that the privilege did not transfer because the debtor and trustee had an adversarial relationship).  When adopting the balancing approach, the potential for harm to the individual must be weighed against the trustee's duty maximize the estate.  SEC v. Marker, 2006 WL 288426 at *4.

Of course, when determining if the privilege passes, the answer to the question might be that the privilege never existed.  In re French, 162 B.R. 541, 547 (Bankr. D.S.D. 1994). Attorney-client privilege does not extend to information disclosed during the preparation of a bankruptcy petition or schedules.  French, 162 B.R. at 548; U.S. v. White, 950 F.2d 426 (7th Cir. 1991); U.S. v. Lawless, 709 F.2d 485 (7th Cir. 1983)(information transmitted to an attorney for inclusion in a tax return was not privileged).  Such information does not fall under the auspices of the privilege because "there is no intent for the information to be held in confidence because the information is to be disclosed on documents publicly filed with the bankruptcy court." White, 950 F.2d at 430.  Moreover, there is no expectation of privacy with these forms of documentation because "in bankruptcy, debtors are obligated to disclose all assets and liabilities as part of an honest financial reorganization. . .That kind of disclosure is not the same as. . . how to maximize assets through pre-petition planning or what strategies might be used to restructure existing debt." French, 162 B.R. at 548.  This line of reasoning is equally applicable to information transmitted during the preparation of articles of incorporation, which are filed publicly in the Secretary of State's office.

In resolving the present matter, the court finds that a multilayered approach may reach the most appropriate outcome for all parties. First, the stock certificates of Game Room issued in the debtor's name are property of the estate pursuant to 11 U.S.C. § 541. As such, Horsley is directed to turn the certificates over to the trustee immediately. Second, any information given to Horsley by the debtor for the purpose of incorporating Game Room is not privileged. Finally, under the balancing approach addressed herein, the court will allow the 2004 examination of Horsley to proceed. The trustee's waiver of attorney-client privilege is valid to the extent that questions asked during the examination pertain to the administration of estate property. No harm will befall the debtor through questions posed to determine if there are assets which would be considered estate property. However, the trustee's waiver is not a blanket waiver. Questions which go beyond estate administration into other areas of the debtor's conduct may be prohibited. To ensure that attorney-client privilege is maintained where appropriate, counsel for the debtor is invited to attend the examination and interpose objections consistent with this ruling.

Based on the foregoing, the motion for a Rule 2004 examination is **ALLOWED**.

**END OF DOCUMENT**